UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MYRA OSTRANDER,
o/b/o D.O., a minor,

        Plaintiff,        Civil Action No. 14-12799
                            Honorable Laurie J. Michelson
                            Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [9, 10]**

Myra Ostrander brings this action on behalf of her minor son, D.O. ("Plaintiff"),[1] pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [9, 10], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Plaintiff is not disabled under the Act is supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [10] be GRANTED, Plaintiff's Motion for Summary Judgment [9] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

---

[1] For convenience, the Court will refer to D.O., the minor child, as "Plaintiff" throughout this brief, although his mother, Myra Ostrander, is the named plaintiff in this action.

## II. REPORT

### A. Procedural History

On April 11, 2012, an application for SSI was filed on Plaintiff's behalf, alleging a disability onset date of December 8, 1998. (Tr. 110-15). This application was denied initially on June 29, 2012. (Tr. 63-66). A timely request for an administrative hearing was filed on Plaintiff's behalf, and a hearing was held on March 15, 2013, before ALJ Andrew Sloss. (Tr. 33-53). Both Plaintiff and his mother appeared and testified at the hearing, represented by attorney Andrew Ferguson. (*Id.*). On April 1, 2013, the ALJ issued a written decision finding that Plaintiff is not disabled under the Act. (Tr. 17-29). On May 14, 2014, the Appeals Council denied review. (Tr. 1-3). On behalf of Plaintiff, Ms. Ostrander timely filed for judicial review of the final decision on July 17, 2014. (Doc. #1).

### B. Framework for Child Disability Determinations

A child under age eighteen is considered "disabled" within the meaning of the Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(C)(i). The Social Security regulations set forth a sequential three-step process for determining a child's disability claims: first, the child must not be engaged in "substantial gainful activity"; second, the child must have a "severe" impairment; and third, the severe impairment must meet, medically equal, or functionally equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *See* 20 C.F.R. §416.924(a).

To "meet" a listed impairment, a child must demonstrate both the "A" and "B" criteria of the impairment. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. "Paragraph A of the listings is

a composite of medical findings which are used to substantiate the existence of a disorder" whereas the "purpose of the paragraph B criteria is to describe impairment-related functional limitations which are applicable to children." *Id.* Further, to be found disabled based on meeting a listed impairment, the claimant must exhibit all the elements of the Listing. *See Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003).

If a child's impairment does not "meet" a listed impairment, the impairment may still be medically or functionally equal in severity and duration to the medical criteria of a listed impairment. *See* 20 C.F.R. §416.926a. "Medical equivalency is covered by 20 C.F.R. §416.926; functional equivalency is covered by Section 416.926a." *Vansickle v. Comm'r of Soc. Sec.*, 277 F. Supp. 2d 727, 729 (E.D. Mich. 2003).

"To determine medical equivalence, the Commissioner compares the symptoms, signs, and laboratory findings concerning the alleged impairment with the medical criteria of the listed impairment." *Walls v. Comm'r of Soc. Sec.*, 2009 WL 1741375, at *8 (S.D. Ohio June 18, 2009) (citing 20 C.F.R. §416.926(a)). A claimant can demonstrate medical equivalence in any of three ways:

> (1) by demonstrating an impairment contained in the Listings, but which does not exhibit one or more of the findings specified in the particular listing, or exhibits all of the findings but one or more of the findings is not as severe as specified in the particular listing, if the claimant has other findings related to his impairment that are at least of equal medical significance to the required criteria;
>
> (2) by demonstrating an impairment not contained in the Listings, but with findings at least of equal medical significance to those of some closely analogous listed impairment; or
>
> (3) by demonstrating a combination of impairments, no one of which meets a Listing, but which in combination produce findings at least of equal medical significance to those of a listed impairment.

*Evans ex rel. DCB v. Comm'r of Soc. Sec.*, 2012 WL 3112415, at *6 (E.D. Mich. Mar. 21, 2012)

(quoting *Koepp v. Astrue*, 2011 WL 3021466, at *10 (E.D. Wis. July 22, 2011)); *see also* 20 C.F.R. §416.926. "The essence of these subsections is that strict conformity with the Listing Requirements is not necessarily required for a finding of disability. If a plaintiff is only able to demonstrate most of the requirements for a Listing or if he or she is able to demonstrate analogous or similar impairments to the impairments of a Listing, the plaintiff may nonetheless still satisfy the standards if the plaintiff can show impairments of equal medical significance." *Evans*, 2012 WL 3112415, at *7 (quoting *Emeonye v. Astrue*, 2008 WL 1990822, at *4 (N.D. Cal. May 5, 2008)).

Regarding functional equivalence, there are six "domains" that an ALJ considers: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. *See* 20 C.F.R. §416.926a. Functional equivalence to a listed impairment exists when the child has an "extreme" limitation in one of the six domains or "marked" limitations in two of the six. *See* 20 C.F.R. §416.926a(d). An "extreme" limitation exists when a child's impairment(s) interferes "very seriously" with her ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. §416.926a(e)(3)(i). A "marked" limitation results if the child's impairment(s) interferes "seriously" with her ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. §416.926a(e)(2)(i).

### C.   Evidence of Record

#### 1.   *Disability Reports*

Plaintiff was born on September 8, 1998, making him thirteen years old at the time of his application. (Tr. 125). Plaintiff's mother reported that his disabling conditions consist of asthma, nosebleeds, and a learning impairment. (Tr. 128-29). She reported that these conditions

4

have disabled him since he was three months old. (*Id.*). Plaintiff was reported to be taking several medications for allergies and asthma, with no noted side effects. (Tr. 131). His mother reported that his daily activities include personal care, attending school, playing video games with friends, and preparing meals. (Tr. 119-22).

        2.    *The Administrative Hearing*

Plaintiff testified at the hearing that he attends school, is in the eighth grade, and gets along well with his friends. (Tr. 36-37, 51). He suffers from dyslexia and receives special education services for reading and writing. (Tr. 39, 48). However, he is only one grade level behind in both reading and math. (Tr. 39).

Plaintiff also testified that he has asthma attacks on a "daily" basis and must use his inhaler – which causes lightheadedness and fatigue – a "couple times a day." (Tr. 38, 40-42). Indeed, Plaintiff testified that, after he uses his inhaler, he usually ends up falling asleep. (Tr. 43-44). He testified that he has difficulty participating in physical education and sports because of his asthma and allergies, but he indicated he plays basketball on a team. (Tr. 36, 42). Plaintiff testified that he does not go outside very much because of his asthma and allergies, instead staying inside and playing video games. (Tr. 37). According to Plaintiff, he has not finished recent school years because his allergies and "lower immunity system" cause him to get sick often. (Tr. 44-45).

Plaintiff also testified that he suffers from nosebleeds "all the time" and that, at times, the blood "goes down in the back of [his] throat and [he] end[s] up throwing up." (Tr. 46). According to Plaintiff's mother, a doctor cauterizes his nose every couple of years, which stops the bleeding for some period of time, but Plaintiff's nosebleeds eventually return. (Tr. 47). Plaintiff's mother also testified that, approximately twice a week, the school calls and asks her to

5

pick up Plaintiff because "he's either sleeping or he's bleeding." (Tr. 44).

### 3. School Records and Medical Evidence

In April 2010, a psychological evaluation was performed by Casey Park, a school psychologist. (Tr. 177-80). During this evaluation, Plaintiff was administered the Wechsler Intelligence Scale for Children, Fourth Edition (WISC-IV) and the Wechsler Individual Achievement Test, Second Edition (WIAT-II). (*Id.*). The examiner noted that Plaintiff's performance on the WISC-IV indicated a full scale IQ of 79. (Tr. 178). His performance on the WIAT-II revealed average skills in math and low average skills in reading. (Tr. 179).

Additional school records indicate that, while in eighth grade, Plaintiff was participating in special education on a part-time basis. An Individualized Education Program dated May 12, 2011, indicates that Plaintiff was receiving special education support in the areas of reading and writing. (Tr. 158-73). Plaintiff's most recent school report card, dated March 2, 2012, reflected grades in the A, B, and C range for the fourth marking period, with an overall grade point average of 3.3 for that period. (Tr. 182). Moreover, Plaintiff's report card does not note a significant number of absences from school (only two or three during the marking period). (*Id.*).

Two of Plaintiff's seventh grade teachers, Allyson Mills and Celeste Webb, completed a teacher questionnaire on April 26, 2012. (Tr. 135-42). They indicated that Plaintiff was performing at the 6th-7th grade level with respect to reading, math, and written language skills. (Tr. 135). They also indicated that Plaintiff has asthma; however, they noted no significant difficulties with regard to acquiring and using information, attending and completing tasks; interacting and relating with others, moving about and manipulating objects, or caring for himself. (Tr. 135-41).

With respect to Plaintiff's asthma and allergies, although Plaintiff did visit his family physician with complaints of a cough on occasion (*e.g.,* Tr. 189, 191-94, 197-98), there is no

6

indication in the record of recurrent emergency room visits or inpatient hospitalizations for acute respiratory symptoms, bronchitis, or pneumonia. The record further reveals that Plaintiff's respiratory symptoms have remained under control with medication (including allergy injection therapy and the use of an inhaler and nebulizer). (Tr. 203-05). For example, treatment notes from Dr. Pacita Tanhehco, dated July 19, 2012, describe Plaintiff's asthma as "stable" and indicate that Plaintiff is to continue using his albuterol inhaler as needed, especially prior to playing sports. (Tr. 204). At a follow-up visit on November 27, 2012, Dr. Tanhehco noted that Plaintiff's asthma and allergy symptoms "had been under good control on the allergy injections," and that Plaintiff denied any nocturnal or exercise-induced symptoms. (Tr. 205). Dr. Tanhehco also noted at that time that Plaintiff was only using his inhaler once or twice a week. (*Id.*).

### D. The ALJ's Findings

At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 9, 2012, the application date. (Tr. 20). At Step Two, the ALJ found that Plaintiff has the following severe impairments: asthma, allergies, and a learning impairment. (Tr. 20-21). At Step Three, the ALJ concluded that these impairments do not meet or medically equal a listed impairment. (Tr. 21). The ALJ also found that Plaintiff's impairments do not functionally equal any Listing because he has less than marked limitations in the domains of acquiring and using information and health and physical well-being, and no limitations in any other domain. (Tr. 22-28). Accordingly, the ALJ determined that Plaintiff is not disabled under the Act. (Tr. 28-29).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the

Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001); *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision

every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

### F. Analysis

In his motion for summary judgment, Plaintiff does not actually argue that his impairments meet, medically equal, or functionally equal any Listing. Nor does Plaintiff challenge the ALJ's findings as to his limitations in any of the six functional domains. Rather, Plaintiff simply argues that the ALJ committed error by failing to "properly evaluate all the medical records and opinions of evidence." (Doc. #9 at 7). However, the only medical evidence Plaintiff appears to allege the ALJ did not "properly evaluate" are records indicating that he has "allergic rhinitis, conjunctivitis and asthma[,]" that his "allergic rhinitis symptoms had been getting worse," and that he "complained of sneezing, itching, and eye watering"; as well as education records indicating that Plaintiff has "below grade level reading skills and difficulty spelling," and "presents with a consistent cognitive profile which places his ability to process information within the Low Average range." (*Id.* at 9-10 (citing Tr. 174, 179, 203-04)).

Contrary to Plaintiff's assertion, however, the ALJ specifically discussed this evidence. Indeed, the passages selectively quoted by Plaintiff actually read as follows: "His mother stated that his allergic rhinitis symptoms had been getting worse *since he stopped getting his allergy injections last year. He complained of sneezing, itching and eye watering, especially when mowing the lawn."* (Tr. 204 (emphasis added)). Moreover, as the ALJ noted, in those same treatment notes, Dr. Tanhehco described Plaintiff's asthma as "stable" and merely indicated that he should continue using his inhaler as needed. (Tr. 21 (citing Tr. 204)). The ALJ also noted

9

that, at a follow-up visit in November 2012, Dr. Tanhehco indicated that Plaintiff's allergy and asthma symptoms "had been under good control" with allergy injections, that Plaintiff denied any nighttime or exercise-related symptoms, and that he used his inhaler only once or twice a week. (Tr. 21 (citing Tr. 205)).

Similarly, Plaintiff ignores the fact that the ALJ specifically discussed school psychologist Casey Park's evaluation, stating that she noted that Plaintiff performed in the average range with respect to math and low average with respect to reading. (Tr. 20 (citing Tr. 179)). The ALJ also considered and discussed other education records indicating that Plaintiff had below grade level reading and written language skills, and that he continued to be eligible for special education services. (Tr. 20-21 (citing Tr. 135-42, 162, 174)). Plaintiff's assertion that the ALJ failed to consider certain medical or educational evidence is simply without merit; the ALJ considered the information referenced by Plaintiff, but concluded, in weighing it against other record evidence, that Plaintiff was not disabled.

Considering the entire record, the Court finds no error in the ALJ's analysis. The ALJ noted that despite Plaintiff's claims of disability due to asthma and allergies, the medical evidence of record does not reveal any serious breathing difficulties, recurrent emergency room visits, or hospitalizations. (Tr. 21). Indeed, Plaintiff's conditions appear to be well-controlled with allergy injections and the use of an inhaler once or twice a week. (Tr. 205). It does not appear that Plaintiff's life has been significantly disrupted by his conditions, as his own testimony shows that he does fairly well in school, has friends, and plays basketball. (Tr. 36-37, 42, 51).

The ALJ noted only two domains in which Plaintiff exhibits any limitations, finding that Plaintiff has a "less than marked limitation" in acquiring and using information, and in health

and physical well-being. (Tr. 22-28).[2] Both findings are supported by substantial evidence.

Regarding Plaintiff's less-than-marked limitation in acquiring and using information, the ALJ acknowledged that Plaintiff has a learning disorder, participates in special education on a part-time basis, and has a full-scale IQ of 79. (Tr. 23, 178). However, the ALJ also noted that Plaintiff's most recent report card indicates an "adequate level of functioning" and a cumulative grade point average of 2.1. (Tr. 23, 182). The ALJ also pointed out that Plaintiff's seventh grade teachers indicated that he was performing at the sixth or seventh grade level in math, reading, and writing, and they opined that he has no limitation in the domain of acquiring and using information. (Tr. 23, 135-36). Taken together, this evidence supports the ALJ's conclusion of a less-than-marked limitation in this domain. Plaintiff offers no evidence or argument to the contrary.

Regarding Plaintiff's less-than-marked limitation in health and physical well-being, the ALJ also appropriately considered the record evidence. He found that Plaintiff has a history of asthma, but that his "symptoms are well controlled with medication." (Tr. 28). The ALJ further observed that the record reveals no history of hospitalizations or repeated emergency room or urgent care visits due to respiratory difficulties. (*Id.*). The ALJ also noted that, contrary to Plaintiff's hearing testimony that he uses his inhaler twice a day, the medical evidence indicates that his conditions are well-controlled by using an inhaler only once or twice per week. (Tr. 21, 205). Thus, the ALJ's finding of a less-than-marked limitation in this domain is consistent with the evidence of record.

For all of these reasons, and upon an independent review of the record, the ALJ's conclusion that Plaintiff is not disabled is supported by substantial evidence.

---

[2] The ALJ specifically found that Plaintiff has "no limitation" in any of the other domains. (Tr. 22-28).

11

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **[10]** be **GRANTED**, Plaintiff's Motion for Summary Judgment **[9]** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: March 30, 2015                          s/David R. Grand
Ann Arbor, Michigan                      DAVID R. GRAND
                                                    United States Magistrate Judge

### REVIEW

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. *See* E.D. Mich. L.R. 72.1(d)(2).

*Note these additional requirements at the direction of Judge Michelson:*

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen (14) days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same

order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 30, 2015.

    s/Eddrey O. Butts
    EDDREY O. BUTTS
    Case Manager